# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

ANNE CRABBS, *et al.,*     :
            :
 Plaintiffs,      :
            :  **Case No. 2:16-cv-0387**
 v.          :
            :  **JUDGE ALGENON L. MARBLEY**
RASHAD PITTS, *et al.,*     :
            :  **Magistrate Judge Jolson**
 Defendants.     :

## <u>OPINION & ORDER</u>

This matter comes before the Court on the Motions in Limine filed by Defendants (ECF Nos. 113 – 117 and 122) and Plaintiffs (ECF Nos. 106 and 129 – 132) and Plaintiffs' Motion to Alter or Amend this Court's Summary Judgment Order (ECF No. 106).  The Court issued oral decisions on the motions at the Monday, October 22, 2018 final pretrial conference, but sets forth its reasoning more fully herein.  For the reasons that follow, the Court **GRANTS** Plaintiffs' Motion to exclude the Response to Resistance Board's investigation and findings, Defendants' Motion to Exclude Evidence Regarding Dismissed Claims and Parties, Defendants' Motion to Exclude Evidence of Defendants' Prior Use of Taser Against a Subject, and Defendants' Motion to Exclude Plaintiffs' Undisclosed Evidence of Keith Crabbs' Alleged Mental Health Injuries.  The Court **GRANTS IN PART** Defendants' Motion to Exclude Evidence of Defendants' Prior Discipline, Plaintiffs' Motion to Exclude Post-Arrest Hearsay and Conduct, Plaintiffs' Motion to Exclude Evidence Proffered by Steve Ijames, and Plaintiffs' Motion to Exclude Evidence of Defendants' Awards and Commendations.  The Court **DENIES** Defendants' Motion to Exclude Testimony from William Schnackel, M.D. and Plaintiffs' Motion to Limit Testimony of Dora D'Amato and Roland D'Amato, and **WITHOLDS RULING** on all or part of Defendants' Motion to Exclude

All or Any Portion of Plaintiffs' Demonstrative Videos and Plaintiff's Motion to Exclude Post-Arrest Hearsay and Conduct. The Court **DENIES** Plaintiffs' Motion to Alter or Amend this Court's Summary Judgment Order.

## I. STANDARD OF REVIEW

The court should grant a motion in limine "only when . . . evidence is . . . clearly inadmissible on all potential grounds." *Delay v. Rosenthal Collins Grp., LLC*, No. 2:07-CV-568, 2012 WL 5878873, at *2 (S.D. Ohio Nov. 21, 2012). If a court cannot "determine whether . . . certain evidence is clearly inadmissible, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in the proper context." *Id.* Courts should rarely issue orders that "exclude broad categories of evidence . . . . [The] better practice is to deal with questions of admissibility of evidence as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *see also Morrison v. Stephenson*, No. 2:06-CV-283, 2008 WL 343176, at *1 (S.D. Ohio Feb. 5, 2008) ("Courts . . . are generally reluctant to grant broad exclusions of evidence in limine, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence."). The decision "to grant a motion in limine falls within the sound discretion of the trial court." *Delay*, 2012 WL 5878873, at *2.

## II. LEGAL STANDARDS

### A. Generally Applicable Rules of Evidence

Only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable," and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevance is measured by an "'extremely liberal'" standard. *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009) (internal citation omitted). An item "of

evidence does not need to carry a party's evidentiary burden in order to be relevant; it simply has to advance the ball." *Id.* at 401.  Additionally, evidence can be relevant even if it does not relate to a fact in dispute, provided the evidence supplies background information about a party or issue. *See* Fed. R. Evid. 401 Advisory Committee's Note on Proposed Rules ("Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding.").  Indeed, "relevant evidence is admissible unless" excluded under a specific provision of the Constitution, a federal statute, Federal Rules of Evidence, or "other rules prescribed by the Supreme Court."  Fed. R. Evid. 402.

Rule 403 can operate to bar otherwise relevant evidence.  Rule 403 grants trial courts discretion to exclude evidence "if its probative value is substantially outweighed" by the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

Otherwise relevant evidence of character, character trait, crimes, wrongs, or other acts is likewise inadmissible under Rule 404 "to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b).  "[E]vidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  *Id.*

### III. ANALYSIS

### A. Plaintiffs' Motions in Limine

*1. Motion to Alter or Amend the Judgment (ECF No. 106)*

Plaintiffs move to alter or amend this Court's Summary Judgment Order (ECF No. 100) dismissing Plaintiffs' *Monell* claim.  This Court granted Summary Judgment in favor of Sheriff Martin on Plaintiffs' claim that Sheriff Martin was liable for ratifying Officer Pitts' use of force.

(ECF No. 100 at 25–27). The basis for this Court's Summary Judgment order was that, regardless of whether the investigation into the incident was sufficient to avoid *Monell* liability, Sheriff Martin's actions could not have been "the 'moving force' behind the alleged constitutional violation" because actions that occur "after an event cannot logically be said to have caused the event that preceded it." *Crabbs v. Pitts*, No. 2:16-cv-387, 2018 WL 3328404, at *12–13 (S.D. Ohio July 6, 2018). Plaintiffs contend that they did not have the opportunity to address whether the inadequate investigation was the moving force, that they do not need to show that the inadequate investigation was the moving force, and renew their argument that the investigation was inadequate.

First, Plaintiffs contend they did not have the opportunity to address whether "the ratification was 'the moving force'" because Defendants did not make any argument about the moving force requirement before their Reply brief on Summary Judgment. (ECF No. 106 at 3). The pleadings do not support Plaintiffs' argument. Although Defendants did not use the words "moving force" until their Reply in Support of Defendants' Motion for Summary Judgment, (ECF No. 89), the Defendants addressed ratification, albeit briefly, in their Motion for Summary Judgment. (ECF No. 82 at 38–39). Plaintiffs, in turn, set out their argument in support of ratification in their Response. (ECF No. 86 at 41–45). Plaintiffs specifically argued that Martin's actions were the "moving force" behind another of their theories of liability in this case. (ECF No. 86 at 41). They proceeded to argue that the investigation was inadequate. Plaintiffs thus had the opportunity to argue ratification and were aware of a "moving force" requirement in at least one other context for *Monell* liability.

Second, Plaintiffs argue that the lack of a meaningful investigation is evidence of an "unofficial policy condoning" the conduct at issue that then forms the moving force for a

violation. (ECF No. 106 at 5–6). In other words, they do not need to address the "moving force" requirement when arguing inadequate investigation. The main case that Plaintiffs cite for this proposition, *Baker v. Union Township, Ohio*, No. 1:12-cv-112, 2013 WL 4502736 (S.D. Ohio 2013), suggests that the lack of a meaningful investigation can show ratification because it "can be seen as evidence of a policy that would condone the conduct at issue." *Id.* at *23. But proving ratification through inadequate investigation does not dispense with the moving force requirement. *See Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. 2013) (Sheriff's "after-the-fact approval of the investigation, which did not itself cause or continue a harm against [Plaintiff] was insufficient to establish the *Monell* claim."). Other articulations of the requirements for showing ratification by inadequate investigation have gone as far as requiring a showing of four elements: "the flaws in this particular investigation were representative of (1) a clear and persistent pattern of illegal activity, (2) which the Department knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the Department's custom was the cause of the [incident]." *Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005). Thus, this Court's rationale on Summary Judgment stands—Plaintiffs have not shown "that the ratification was the 'moving force' behind the alleged constitutional violations. (ECF No. 100 at 26).

Lastly, even if Plaintiffs were correct that no evidence is required beyond showing an inadequate investigation, the cases they have cited as finding inadequate investigations are distinguishable from this case. For example, in *Baker v. Union Township, Ohio*, No. 1:12-cv-112, 2013 WL 4502736 (S.D. Ohio 2013), the court denied summary judgment on the issue of inadequate investigation because the officer conducting the investigation failed to discuss the incident with the officer involved, did not speak with the Plaintiffs, and did not "confirm that the

locations of the Taser hits on [Plaintiff] comported with [the officer's] written account of the incident." *Id.* at *24. In *Brown v. Chapman*, No. 1:11 CV 01370, 2015 WL 159794 (N.D. Ohio Jan. 13, 2015), the court denied summary judgment on a claim of inadequate investigation because the City of Cleveland did not "discover the eyewitness testimony that contradicts the Defendants' version of events." *Id.* at *14.

Here, Plaintiffs assert that the investigating officer, Sergeant Karbler, did not speak with Mr. Crabbs or his mother. (ECF No. 106 at 7). However, Plaintiffs did not appear to dispute Sergeant Karbler's deposition testimony that he spoke with Mr. Crabbs and Officer Pitts the night of the incident. (ECF No. 57-6 at 38–40). Sergeant Karbler also walked through the Crabbs residence that night with Office Pitts as part of their discussion of what happened. (ECF No. 57-6 at 44–45). The Board then reviewed the documents that Sergeant Karbler sent to them, including the video taken the night of the incident. (ECF No. 57-11 at 42–43). The investigation is thus significantly different from the defects that the *Brown* and *Baker* courts found to justify denial of summary judgment. Plaintiffs' Motion is **DENIED**.

### 2. Response to Resistance Board's Investigation and Findings (ECF No. 106)

Plaintiffs move to exclude evidence of the Response to Resistance Board's investigation and findings. Plaintiffs do not move to exclude testimony that Officer Pitts knew Mr. Crabbs was armed. Defendants have filed no response. For the following reasons, Plaintiffs' Motion is **GRANTED**.

After the incident on September 30, 2014, the Delaware County Sheriff's Office, through the Response to Resistance Board ("the Board"), investigated Officer Pitts' conduct on the night in question and found that his behavior complied with department policy. Plaintiffs argue that this

investigation and its outcome are irrelevant or should be excluded under Rule 403. (ECF No. 106 at 8–10).

Given the low bar for considering evidence relevant, the Board's investigation and findings may be relevant. Compliance with departmental policy does not bear on the constitutional question. *See, e.g.*, *Whren v. United States*, 517 U.S. 806, 815 ("[w]e cannot accept that the search and seizure protections of the Fourth Amendment are so variable" as "police enforcement practices, [which] . . . vary from place to place and from time to time."); *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992) ("Under 1983, the issue is whether [the officer] violated the Constitution, not whether he should be disciplined by the local police force."). Nevertheless, compliance with department policies could have some probative value on the reasonableness of force. *See, e.g.*, *Whren*, 517 U.S. at 816 ("[I]t is a long leap from the proposition that following regular procedures is *some evidence* of lack of pretext to the proposition that failure to follow regular procedures proves (or is an operational substitute for) pretext.") (emphasis added); *King v. Taylor*, 944 F.Supp.2d 548 (E.D.Ky. 2013) (discussing permissible testimony regarding police procedures as long as understood not to bear on the constitutional question).

Even if the Board's findings are relevant, such probative value is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. In evaluating the evidence under Rule 403, the Court considers "the availability of other means of proof." *United States v. Merriweather*, 78 F.3d 1070, 1077 (6th Cir. 1996) (citing *Huddleston v. United States*, 485 U.S. 681, 688 (1988)). Here, informing the jury of the Board's findings risks that the jury will take those findings as a judgment that Officer Pitts' behavior was permissible. Furthermore, Defendants have expert testimony to show standard police practice. Unlike evidence of the Board's findings, this expert testimony does not carry with it the potential

for unfair prejudice.  Thus, the danger of unfair prejudice, confusing the issues, and misleading the jury substantially outweighs the slight, if any, probative value of the evidence of the Board's investigation and findings.  Plaintiffs' motion is therefore **GRANTED**.

### *3. Post-Arrest Statements, Conduct, and Events (ECF No. 129)*

Plaintiffs move to exclude several incidents of post-arrest statements and conduct.  These fall into two main categories: (1) statements by Anne Crabbs and Keith Crabbs or incidents of Mr. Crabbs' conduct occurring after Mr. Crabbs' arrest; and (2) police officers' descriptions of items found in Mr. Crabbs' possession after he was arrested.  Defendants filed a response.  (ECF No. 146).  For the following reasons, this Court **WITHOLDS RULING** on the admissibility of post-arrest statements and conduct but **GRANTS** Plaintiff's Motion regarding descriptions of items seized.

The first category of evidence Plaintiffs seek to exclude is post-arrest statements and conduct.  Some of these statements appear as descriptions in the Defendants' narrative supplements, some are picked up on the police cruiser's dashcam audio, and others Mr. Crabbs admitted to in his deposition (ECF No. 100 at 7).  Mr. Crabbs shouted profanities and admitted making statements such as "I'll kill each one of them [deputies] one by one."  (ECF No. 57-3 at 24) (quoting ECF 100 at 7).  One officer described Mr. Crabbs as "ha[ving] a clear dislike to Law enforcement officers."  (ECF No. 129 at 4).  Anne Crabbs described to officers that Mr. Crabbs had "attempted suicide a few days prior."  (*Id.*).  Additionally, Plaintiffs reference an incident that occurred while Mr. Crabbs was in jail.  (*Id.* at 14).

Defendants do not deny that evidence about the incident in the jail is irrelevant.  As such, Plaintiffs' Motion as to that incident is **GRANTED**.  Defendants have asserted, however, that the other evidence is relevant and that they would use the evidence "to show Keith Crabbs's motive

or intent, the reasonableness of Defendants' use of force, and the extent of Keith Crabbs's alleged injuries." (ECF No. 146 at 3).

As a threshold matter, this evidence must be relevant. Evidence is relevant if it "has any tendency to make a fact [of consequence in determining the action] more or less probable." Fed. R. Evid. 401. "Whether or not a fact is of consequence is determined not by the Rules of Evidence but by substantive law." *Sherrod v. Berry*, 856 F.2d 802, 804 (7th Cir. 1988) (quoting 1 Weinstein's Evidence ¶ 401[03], 401–19). Plaintiffs make an unreasonable search and seizure and excessive use of force claim based on Mr. Crabbs's arrest on September 30, 2014. Under either claim, the timing of the inquiry is the same: what the officer *knew at the time* of the search and seizure or use of force. *See Terry v. Ohio*, 392 U.S. 1, 19–20 (1968) (one inquiry of reasonableness of search and seizure is "whether the officer's action was justified at its inception"); *Graham v. Connor*, 490 U.S. 386, 396 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). Generally, statements and conduct post-arrest are irrelevant to the reasonableness of a search and seizure or use of force. *See, e.g.*, *Sherrod*, 856 F.2d at 805 ("Knowledge of facts and circumstances gained after the fact (that the suspect was unarmed) has no place in the trial court's or jury's proper post-hoc analysis of the reasonableness of the actor's judgment.").

The officers' descriptions of items they found in Mr. Crabbs's possession, including judgments about the capabilities of those items and the condition in which they were found, are irrelevant to both probable cause and reasonability of force. Plaintiffs point to the officers' speculation that the bullets they found in Mr. Crabbs's possession were "armor piercing," (ECF No. 129 at 6), and that the officers found Mr. Crabbs's gun with the safety off. (*Id.*). These descriptions were made after the arrest and based on evidence collected after the arrest. They can

have no bearing on probable cause or reasonability. Plaintiffs' Motion as to these items is therefore **GRANTED**.

As to the post-arrest statements and conduct, Defendants contend that these are relevant "to show Keith Crabbs's motive or intent, the reasonableness of Defendants' use of force, and the extent of Keith Crabbs's alleged injuries." (ECF No. 146 at 3). The relevance of these statements depends on how Plaintiffs and Defendants develop their case at trial. In *Spencer v. MacDonald*, No. 14-cv-13858, 2016 WL 1742871, at *2 (E.D. Mich. May 3, 2016), for example, the district court allowed evidence of post-arrest conduct as relevant to "probable cause to arrest Plaintiff for drunk and disorderly conduct." There, however, the Plaintiff's defense was "that he was sober at the time of the incident and politely complied with orders from the officers." *Id.* This court therefore **WITHOLDS RULING** on the admissibility of these statements until trial and, if admitted, will consider a limiting instruction to the jury that such statements are not to be used as post-hoc rationalizations.

Mr. Crabbs's statements refusing medical treatment, however, do not suffer from any relevance problems. These statements reflect Mr. Crabbs's judgment, at the time, of the extent of his injuries. Plaintiffs argue that Mr. Crabbs's statements, both recorded in the cruiser dashcam audio and described by deputies, are inadmissible hearsay.

Mr. Crabbs's statements in the audio recording are not hearsay. Plaintiffs' assertion that Mr. Crabbs's statements are not statements of a party-opponent because they are not inconsistent with prior statements is contradicted by the plain text of Federal Rule of Evidence 801(d)(2)(A). Rule 801(d)(2)(A) contains no requirement that the party's statement contradict a previous statement. The rule regarding prior inconsistent statements is found in Rule 801(d)(1) and does not apply to Mr. Crabbs's statements. A slightly more difficult question is whether Mr. Crabbs

qualifies as a party now that he is deceased. *See, e.g.*, *Estate of Shafer v. Commissioner*, 749 F.2d 1216, 1220 (6th Cir. 1984) (decedent "through his estate, is a party to this action" so "his statements are a 'classic example of an admission'"). Even if he does not, however, his statements would be exceptions to hearsay as excited utterances. Fed. R. Evid. 803(2). Mr. Crabbs appears to have been "under the stress of excitement" from the incident. *Id.*

Descriptions in the officers' narrative statements of what Mr. Crabbs said and how he acted pose an issue of double hearsay, requiring an exception both for Mr. Crabbs's statements and for the officers' narrative report. Defendants argue that the police reports are admissible under the public records exception in Federal Rule of Evidence 803(8). "Police reports have generally been excluded except to the extent to which they incorporate firsthand observations of the officer." Fed. R. Evid. 803(8) Advisory Committee's Notes on Proposed Rules. In the Sixth Circuit, "[a] police report is . . . a 'public record and report' within the meaning of the first part of Rule 803(8)." *Baker v. Elcona Homes Corp.*, 588 F.2d 551 (6th Cir. 1978). The officers' reports contain their first-hand observations. *See, e.g.*, *Drury Properties, LLC v. Flora*, CIVIL ACTION NO. 5:15-153-KKC, 2017 WL 3610533, at *5 (E.D. Ky. Aug. 22, 2017) (allowing officer's summaries of phone calls and text messages). Additionally, Plaintiffs have not challenged the trustworthiness of the reports themselves. *See, e.g.*, *Baker*, 588 F.2d at 558 ("The burden was upon the plaintiffs to show that the report was inadmissible because its sources of information or other circumstances indicated a lack of trustworthiness.").

Therefore, Plaintiffs' Motion is **DENIED** as to statements Mr. Crabbs made regarding medical treatment both in the reports and in the audio recording.

*4. Opinion and Testimony of Steve Ijames (ECF No. 130)*

Plaintiffs move to exclude the opinion of Defendants' expert witness, Steve Ijames. Defendants filed a response. (ECF No. 144). For the following reasons, Plaintiffs' Motion is **GRANTED IN PART** and **DENIED IN PART.**

Defendants agree that Mr. Ijames's Opinions Five through Eight, and the "hot pursuit" element of Opinion One, address claims that this Court has dismissed. As such, "Defendants do not seek to present [them] at trial." (ECF No. 144 at 1). Plaintiffs' Motion is **GRANTED** as to Opinions Five through Eight and the "hot pursuit" portion of Opinion One. This Court will now examine Mr. Ijames's remaining opinions based on the standard for expert testimony.

Federal Rule of Evidence 702 sets out the basic requirements for expert testimony. Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "An opinion is not objectionable just because it embraces an ultimate issue," Fed. R. Evid. 704(a), but experts must not "merely tell the jury what result to reach." Fed. R. Evid. 704 Advisory Committee's Note on Proposed Rules.

In addition to refraining from telling the jury what result to reach, experts cannot "merely express[] a legal conclusion." *DeMerrell v. City of Cheboygan*, 206 F. App'x 418, 426 (6th Cir. 2006) (unpublished) (citing *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994)). It is a fine line between an expert who permissibly opines on an ultimate issue and one who impermissibly tells the jury what result to reach or expresses a legal conclusion. In the context of claims against the police, experts are routinely permitted to "testify about discrete police-practice issues when those experts are properly credentialed and their testimony assists the trier of fact."

*Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 908 (6th Cir. 2004). What experts may not do is take the additional step to conclude that actions were or were not reasonable, appropriate, or in line with police standards. *See Alvarado v. Oakland Cty.*, 809 F. Supp. 2d 680, 690–91 (E.D. Mich. 2011) (expert "may testify regarding nationally recognized police standards governing the use of excessive force, as well as the specific . . . excessive force guidelines to which [the officer] was subject. . . . [but] will not be permitted, either by his report or his testimony at trial, to opine as to whether [the officer's] conduct in arresting Plaintiff was unreasonable under those guidelines or practices."). This prohibition includes statements that "it was objectively unreasonable for [an officer] to shoot [the plaintiff]," *DeMerrell*, 206 F. App'x at 426, that actions an officer took were based on probable cause, *id.*, and "whether the officers used reasonable force," *Hubbard v. Gross*, 199 F. App'x 433, 443 (6th Cir. 2006).

Mr. Ijames impermissibly expresses legal conclusions in Opinions One through Three. In Opinion One, for example, Mr. Ijames states: "The entrance into Mr. Crabbs residence and the seizure/arrest that followed was justified, appropriate, based on adequate probable cause and hot pursuit, and consistent with a prudent and properly trained deputy facing these or similar circumstances." (ECF No. 130-1 at 2). Mr. Ijames's second and third opinions state similar conclusions. These opinions suffer from the same defects as those excluded by other district courts in this circuit for improperly expressing a legal conclusion. Mr. Ijames is therefore prohibited from testifying as to these conclusions.

Mr. Ijames is, however, qualified to testify to standard police practices. Experts have been found to be properly credentialed when they "had considerable experience in the field . . . and . . . [were] testifying concerning a discrete area of police practices about which [they] had specialized knowledge . . . ." *Champion*, 380 F.3d at 909. Mr. Ijames's experience is extensive. Mr. Ijames

has a Bachelor of Science degree in Criminal Justice Administration. (ECF No. 130-1 at 19). He has completed several training programs, albeit most of them related to narcotics. (*Id.*). Mr. Ijames has participated as an instructor in several domestic and international programs on "less lethal force options" (*Id.* at 21–32). He chaired the National Tactical Officers Associations's (NTOA) Less Lethal Force section from 1998 to 2000. (*Id.* at 34). And he has written in several publications regarding less lethal force (*Id.* at 10–13). These experiences suffice to make Mr. Ijames qualified to express an opinion about police policies and practices.

Mr. Ijames's testimony on police practices is also helpful to the jury. Whether testimony will be helpful to the jury is an inquiry of relevance. That is, "whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Fed. R. Evid. 702 Advisory Committee's Note on Proposed Rules (quoting Mason Ladd, *Expert Testimony*, 5 Vand. L. Rev. 414, 418 (1952)). When a "law-enforcement expert[]" is at issue, "the district court, in performing its gatekeeping role, must assess whether, 'without expert testimony, the average juror is unlikely to understand' the material about which the expert proposes to testify." *United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016). Testimony regarding police policy and practices can be helpful to the jury. *See, e.g.*, *Alvarado*, 809 F. Supp. 2d at 691 ("It may be helpful to the jury, for example, to know that Oakland County Deputies are expected to escalate the use of force along a certain a continuum under a certain given set of circumstances."); *United States v. Brown*, 871 F.3d 532, 537 (7th Cir. 2017) ("The legal standard contemplates a reasonable *officer*, not a reasonable person, so it may be useful in a particular case to know how officers typically act in like cases."). Mr. Ijames may therefore testify regarding police practices.

In addition to the prohibition on testimony that is nothing more than a legal conclusion, "an expert cannot simply opine on the credibility of witnesses and the weight of the evidence," *William F. Shea, LLC v. Bonutti Research, Inc.*, No. 2:10-cv-00615-GLF-NMK, 2013 WL 2424382, at *3 (S.D. Ohio June 4, 2013). Mr. Ijames's Opinion Four is problematic under this standard. Opinion Four states: "The deputies involved did not fabricate or conceal evidence in this case." (ECF No. 130-1 at 6). This opinion is nothing more than Mr. Ijames saying that Defendants should win on this claim. Furthermore, Mr. Ijames bases this opinion on his review of the cruiser video and that he "saw nothing to suggest or indicate the video was not an accurate characterization of what occurred," (*id.*), but Mr. Ijames does not appear to have any special qualifications in determining whether a video has been altered. Mr. Ijames's Opinion Four is therefore excluded.

Plaintiffs have made the overarching objection that Mr. Ijames's opinions are prepared solely for litigation. "[I]f a purported expert's opinion was prepared solely for litigation, that may . . . be considered as a basis for exclusion." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) (citing *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434 (6th Cir. 2007)). "A proposed expert's opinion is not prepared solely for litigation when the expert is 'testify[ing] about matters growing naturally and directly out of research [he] ha[s] conducted independent of litigation.'" *Lawrence v. Raymond Corp.*, 501 F. App'x 515, 518 (6th Cir. 2012) (unpublished) (quoting *Johnson*, 484 F.3d at 434). Mr. Ijames's opinions regarding standard police practice have not been prepared solely for litigation. He has extensive experience with police procedures, and any testimony on those matters would be a result of this experience.

*5. Defendants' Awards and Commendations (ECF No. 131)*

Plaintiffs move to "preclude[e] Defendants from wearing body armor," medals, or ribbons at trial and to exclude "questioning of Defendants as to past performance evaluations, awards, [and] commendations." (ECF No. 131 at 1). Defendants filed a response. (ECF No. 145). For the following reasons, Plaintiffs' Motion is **GRANTED IN PART** and **DENIED IN PART.**

Defendants will be permitted to wear their body armor but not medals. The wearing of medals and body armor is typically considered prejudicial. *See, e.g.*, *Case v. Town of Cicero*, 2013 U.S. Dist. LEXIS 148656, at *13 (N.D. Ill. Oct. 16, 2013) ("Ordinarily, police officers are permitted to wear uniforms at trial, though medals are potentially prejudicial to the adverse party."); *Ferreira v. City of Binghamton*, 2016 U.S. Dist. LEXIS 126011 (N.D.N.Y. Sept. 16, 2016) (excluding officers from wearing medals). This reasoning has also been extended to body armor. *See Case*, 2013 U.S. Dist. LEXIS 148656 (officers "may not appear in bullet-proof vests or other protective gear"). Here, however, Defendants assert that the Delaware County Sheriffs Office requires officers to wear body armor, and the body armor is not visible as it is worn beneath the uniform. (ECF No. 145 at 3). To the extent that the body armor will not be visible on Defendants, it poses no risk of unfair prejudice to plaintiffs.

Plaintiffs cite to no rule of evidence to support their Motion to exclude commendations, awards, and performance evaluations. Plaintiffs only argue that "testimony directed to such things[] improperly seeks to augment the credibility of the Defendants." (ECF No. 131 at 1), and that, if such testimony is allowed, they should "be permitted to cross-examine on past issues." (Id. at 2). This objection necessarily implicates the prohibition against character evidence as the improper basis for bolstering Defendants' credibility. Character evidence is generally inadmissible "to prove that on a particular occasion the person acted in accordance with the

character or trait." Fed. R. Evid. 404(a). While Rule 404(a)(2) allows for exceptions in criminal cases, such as offering evidence of good character for the accused, the Federal Rules have expanded no such exception to the civil context. See Fed. R. Evid. 404(a)(2) Advisory Committee's Note on Proposed Rules. *See also Easley v. Haywood*, 2015 WL 1926399, at *4 (S.D. Ohio Apr. 28, 2015) ("[P]erformance evaluations cannot be offered to show that . . . Defendants . . . acted in accordance with their evaluations."); *SEC v. Towers Fin. Corp.*, 966 F. Supp. 203, 205–06 (S.D.N.Y. 1997) (character evidence not allowed in civil case); *but see Carson v. Polley*, 689 F.2d 562, 575–76 (5th Cir. 1982) (suggesting that character evidence could be admitted in proper circumstances in a civil case where the "central issue in a case is 'close to one of a criminal nature'").

Defendants contend that testimony regarding "commendations, awards, or performance evaluations," (ECF No. 145 at 1), is background information, on which witnesses are permitted to testify. They assert that they will not be using testimony about previous work performance as character but "simply would like the option to offer introductory background testimony which may or may not include reference to Defendants' commendations, awards or past performance evaluations." (ECF No. 145 at 3).

Testimony regarding the officers' backgrounds is generally permissible, *see* Fed. R. Evid. 401 Advisory Committee's Note on Proposed Rules, and such background may include whether someone was "promoted during their career." *Carlson v. Banks*, 05 C 1650, 2007 WL 5711692, at *6 (N.D. Ill. Feb. 2, 2007). Thus, "it is common practice for law enforcement witnesses to briefly related (*i.e.*, in response to a question or two) whether they have received commendations during their career." *Id.* at *7.

Defendants are therefore permitted to introduce limited testimony regarding commendations, awards, and past performance as part of the officers' introductory background testimony. Defendants should note, however, that should they expand the use of such testimony to the realm of character evidence, this Court will consider whether Defendants have "open[ed] the door to rebuttal character evidence." *Helfrich v. Lakeside Park Police Dep't*, 497 F. App'x 500, 509–10 (6th Cir. 2012) (unpublished).

Plaintiffs' Motion is therefore **GRANTED IN PART** and **DENIED IN PART**. Defendants may testify briefly as to commendations, awards, and performance evaluations as part of the officers' background information only. Defendants may wear body armor so long as it is not visible. Medals are prohibited.

### 6. Testimony of Dora D'Amato and Roland D'Amato (ECF No. 132)

Plaintiffs move to exclude proposed testimony from the D'Amatos on "the entire history of the D'Amatos' interactions with Keith Crabbs." (ECF No. 132 at 2). Defendants filed a response. (ECF No. 143). For the following reasons, Plaintiffs' Motion is **DENIED**.

Plaintiffs and Defendants appear to agree that what is relevant to probable cause and reasonable use of force is the information the officers had at the time of the incident. Plaintiffs assert, however, that the officers did not have information about the history with the D'Amatos while Defendants assert that the officers did have this information. The D'Amatos' testimony about the history of their relationship with Mr. Crabbs is relevant so long as the Defendants show that the officers were aware of this information prior to their encounter with Mr. Crabbs.

The probative value of the D'Amatos' testimony about their relationship with Mr. Crabbs is not "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Fed. R. Evid. 403. Plaintiffs contend that allowing the D'Amatos to testify to their history with Mr. Crabbs would result in a mini trial on that history. But the D'Amatos' testimony is of high probative value. It will assist in establishing what the officers knew on the night of the incident which is directly relevant to probable cause and reasonableness of force. Furthermore, the only other means of proof available would be the officers' testimony about what the D'Amatos told them, which could suffer from hearsay problems. *See Merriweather*, 78 F.3d at 1077 (6th Cir. 1996) (citing *Huddleston*, 485 U.S. at 688 ("One factor in balancing unfair prejudice against probative value under Rule 403 is the availability of other means of proof.").

To the extent that this testimony could lead the jury to make a decision based on Mr. Crabbs's character, as prohibited under Rule 404, this Court will consider the appropriateness of a limiting instruction on counsel's objection. *See United States v. Perry*, 438 F.3d 642, 649 (6th Cir. 2006) ("[T]he court should nonetheless issue a limiting instruction establishing the basis for the inclusion of Rule 404(b) evidence"). Plaintiffs' Motion is **DENIED**.

### B. Defendants' Motions in Limine

#### 1. Dismissed Claims and Parties (ECF No. 113)

Defendants move "to exclude mention of all previously dismissed claims . . . and to exclude all evidence related to the dismissed claims not specifically relevant to the pending claims." (ECF No. 113 at 1). Defendants argue this evidence is irrelevant under Federal Rule of Evidence 401 and has the possibility to cause undue delay, unfairly and inappropriately damage the credibility of the witnesses, and confuse the jury under Federal Rule of Evidence 403. Given the low bar for relevance, it is possible that dismissed claims might have some probative value, however slight. But the potential for unfair prejudice and confusion to the jury far outweigh any slight probative value. *See, e.g.*, *Moore v. Bannon*, No. 10-12801, 2012 WL 2154274, at *7 (E.D. Mich. June 13,

2012) ("[M]otions in limine should be granted under these circumstances because such evidence has little to do with establishing credibility, and is of little probative value, but instead 'carries significant risk of undue delay and waste of time'") (quoting *L'Etoile v. New England Finish Systems Inc.*, 575 F. Supp. 2d 331, 340 (D.N.H. 2008)); *Duarte v. Catalina Foothills Sch. Dist. No. 16*, No. CV-12-00844-TUC-JAD, 2014 WL 5094128, at *2 (D. Ariz. Oct. 10, 2014) ("[T]o the extent it could be marginally relevant to Plaintiff's credibility, the Court finds that any reference to this dismissed claim at trial is outweighed by Rule 403 considerations."). Plaintiffs have filed no response. Defendants' Motion is **GRANTED**.

### 2. Defendants' Prior Discipline (ECF No. 114)

Defendants move to exclude evidence of Defendants' prior discipline as irrelevant, unfairly prejudicial, and impermissible character evidence. Defendants also argue that Plaintiffs cannot use prior discipline under Rule 608 to attack the Defendants' character for truthfulness. Plaintiffs filed a response stating that they will not introduce evidence of prior discipline except in response to "favorable evidence" of Defendants' past conduct. (ECF No. 137). Neither party has offered this Court any details regarding the nature of the discipline. For the following reasons, Defendants' Motion is **GRANTED IN PART**.

For evidence of prior acts to be admissible under Rule 404(b), it must meet three requirements: (1) there must be "sufficient evidence that the other act in question actually occurred," (2) the other act must be "probative of a material issue other than character," and (3) "the probative value of the evidence [must not be] substantially outweighed by its potential prejudicial effect." *United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir.2003) (citing *United States v. Haywood*, 280 F.3d 715, 719–20 (6th Cir. 2002)).

Defendants argue that there is not sufficient evidence that the other acts actually occurred because a court or tribunal did not make a finding about the previous conduct. (ECF No. 114 at 4). The case that Defendants provide for this proposition, *Watkins v. Cty. of Genesee*, No. 13-13678, 2016 WL 727855 (E.D. Mich. Feb. 24, 2016), did not necessarily require that a court or tribunal have made a finding under this first step of the analysis. Rather *Watkins* used the lack of an official finding about the conduct to support excluding the evidence under Rule 403 because of the "mini-trial" that would result. *Id.* at *8. Neither party has given any indication of what the prior incidences of discipline are and how they may have been determined.

Regardless of whether there is sufficient evidence that the incidents occurred, the larger problem is whether this evidence can be probative of a material issue other than character. This Court "must determine whether one of the factors justifying the admission of "other acts" evidence is material, that is, 'in issue,' in the case, and if so, whether the 'other acts' evidence is probative of such factors." *United States v. Johnson*, 27 F.3d 1186 (6th Cir. 1994). It is not clear from either party's brief what the prior discipline could be relevant to. Defendants do not assert a defense based on mistake or accident, *United States v. Bell*, 516 F.3d 432, 442 (6th Cir. 2008) ("Thus, for other acts evidence to be admissible for the purpose of showing absence of mistake or accident, the defendant must assert a defense based on some type of mistake or accident."), and intent is irrelevant in a Fourth Amendment claim, *Helfrich*, 497 F. App'x at 508 (excluding evidence about officer's "subjective state of mind" under Rule 402 as "irrelevant to . . . excessive-force claim"). This evidence is therefore excluded under Rule 404.

This Court reserves ruling on the admissibility of this evidence under Rule 608 or for impeachment purposes. Rule 608 allows a party to inquire into "specific instances of a witness's conduct . . . if they are probative of the character for truthfulness or untruthfulness of: (1) the

witness; or (2) another witness whose character the witness being cross-examined has testified about." Fed. R. Evid. 608(b). Defendants object that Plaintiffs cannot present extrinsic evidence regarding past discipline to attack Defendants' truthfulness. (ECF No. 114 at 3). But Plaintiffs may still cross-examine Defendants "on specific instances of conduct relevant to credibility." *United States v. Holden*, 557 F.3d 698, 703 (6th Cir. 2009). Without more information regarding the discipline, this Court declines to rule on the admissibility of the Defendants' prior discipline for purposes of attacking their character for truthfulness or the use of the discipline to impeach the Defendants' testimony regarding past positive performance.

The Defendants' Motion is thus **GRANTED** as to introducing prior discipline as substantive evidence. This Court reserves judgment on other potentially permissible uses.

### 3. Defendants' Prior Taser Use (ECF No. 115)

Defendants move to exclude any prior use of a taser against another person. Plaintiffs have not filed a response. For the following reasons, Defendants' Motion is **GRANTED**.

Defendants argue that evidence of previous use of a taser is irrelevant to Defendants' use of a taser against Mr. Crabbs. Additionally, Defendants argue that this evidence is impermissible propensity evidence under Rule 404(b), and would fail the Rule 403 test.

Setting aside relevance, Defendants are correct that any prior use of a taser does not meet the requirements for admitting evidence of "other acts" under Rule 404(b). Rule 404(b) excludes "[e]vidence of a crime, wrong, or other act . . . to show that on a particular occasion the person acted in accordance with the character." Such evidence is permissible "for another purpose," such as the nonexhaustive list of potential uses set out in Rule 404(b): "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2); *United States v. Henderson*, 485 F. Supp. 2d 831, 839 (S.D. Ohio 2007) ("The list of

permissible uses of evidence of other crimes or acts set forth in Rule 404(b) is neither exhaustive nor conclusive."). As Defendants have noted, other courts have excluded prior tasing incidents as "precisely the sort of propensity reasoning Rule 404(b) forbids," *Helfrich*, 497 F. App'x at 507; *Franklin v. Messmer*, 111 F. App'x 386, 388 (6th Cir. 2004) (unpublished) (not abuse of discretion to exclude prior instances of excessive force).

In an excessive force claim, prior instances of similar conduct are of especially dubious relevance given that the inquiry is "whether the officers' actions are objectively reasonable." *Franklin*, 111 F. App'x at 388. Whether an officer previously used a taser does not go towards *objective* reasonability. For evidence of prior acts to be relevant as going to intent, plan, lack of mistake or accident and the like, Defendants would have to put one of those elements in issue. *See Bell*, 516 F.3d at 442; *Simmons v. Napier*, 626 F. App'x 129, 135 (6th Cir. 2015) (unpublished). As Defendants have noted, they "do not assert a defense based on some type of accident or mistake." (ECF No. 115 at 4).

The evidence of the Defendants' previous use of a taser is therefore inadmissible under Federal Rule of Evidence 404(b). Defendants' Motion is **GRANTED**.

*4. Undisclosed Evidence of Mr. Crabbs' Alleged Mental Health Injuries (ECF No. 116)*

Defendants move to exclude undisclosed evidence of Mr. Crabbs' alleged mental health injuries, including testimony by Dr. Schnackel about any mental health injuries, under Federal Rule of Evidence 403 and Federal Rule of Civil Procedure 26(a) and (e) and 37(c)(1). Plaintiffs have filed no response. For the following reasons, Defendants' Motion is **GRANTED**.

Federal Rule of Civil Procedure 26(a) requires disclosure of contact information for "each individual likely to have discoverable information" and any documents the other party has that they "may use to support its claims or defenses." Fed. R. Civ. Pro. 26(a)(1). Federal Rule of Civil

Procedure 26(e) requires a party to supplement these disclosures if they later discover that additional information should have been disclosed to the opposing party. If a party violates these disclosure rules, Federal Rule of Civil Procedure 37(c) provides that "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. Pro. 37(c).

Here, Plaintiffs did not list witnesses they intended to call in response to Defendants' Interrogatories. (ECF No. 116-2 at 5). They instead provided that they would supplement such information to Defendants. Plaintiffs did respond to Interrogatory Six by saying that Mr. Crabbs had experienced emotional distress from the incident, (ECF No. 116-2 at 6), but in their response to Interrogatory Seven that asked for a listing of any medical providers Mr. Crabbs saw in connection with the incident, the Plaintiffs disclosed only an emergency room visit and Dr. Schnackel. (ECF No. 116-2 at 7). In response to Defendants' Request for Production Number Ten, in which Defendants asked for "any and all records regarding any psychological treatment incurred by Keith Crabbs within the past ten (10) years," Plaintiffs responded "None." (ECF No. 116-2 at 11). Plaintiffs' supplemental disclosure stated "Keith has not sought mental health counselling in the past or after the incidents, so there are no providers to name, nor records to obtain." (ECF 116-1).

Plaintiffs represented that there were no mental health records. Under Federal Rule of Civil Procedure 37(c), they may not now come forward with evidence they previously denied existed. Defendants' Motion is hereby **GRANTED**.

### 5. Testimony of William Schnackel M.D. (ECF No. 117)

Defendants move to exclude Dr. William Schnackel's testimony, contending that "Plaintiffs disclosed Dr. Schnackel as only a treating physician and/or 'treating expert'" for Mr.

Crabbs's neck injuries which are not at issue here. (ECF No. 117 at 1). Plaintiffs responded that they will not be offering Dr. Schnackel as an expert witness and that he will only be testifying as to information in his treating chart. (ECF No. 139 at 1–2). For the following reasons, Defendants' Motion is **DENIED**.

Defendants argue that Plaintiffs disclosed Dr. Schnackel only as a "treating expert," not as an expert witness. Defendants seek to prevent any testimony on "causation, a potential mental health injury, or any injury sustained outside of the September 30, 2014 events at issue," which, they contend, would have required Plaintiffs to disclose Dr. Schnackel as an expert witness. (ECF No. 117 at 2). Having failed to do this, Defendants suggest Dr. Schnackel may only testify to Mr. Crabbs's neck injuries. These neck injuries, Defendants say, are irrelevant to Mr. Crabbs's claims because Mr. Crabbs admitted in deposition that his neck was injured before the night in question (*Id.* at 5–6), and Plaintiffs represented that they would not be "seeking expert testimony that the September 30th incident caused Keith Crabbs . . . exacerbation of the pre-existing condition." (*Id.* at 6).

Plaintiffs have disclosed Dr. Schnackel as a witness since nearly the beginning of this litigation. The Plaintiffs filed Supplemental Rule 26 Initial Disclosures that listed Dr. Schnackel as an expert witness. (ECF No. 139-1 at 2). Plaintiffs also listed Dr. Schnackel as a physician who treated Mr. Crabbs for neck injuries in response to Interrogatory Seven (requesting a list of any medical provider that "Mr. Crabbs has consulted with or received treatment from for any injury allegedly received in the incidents referred to in Plaintiff's Complaint."). (ECF No. 116-2 at 7). In response to Interrogatory Six, Plaintiffs described Mr. Crabbs's injuries as "including a four to five inch long scar, in the neck area." (*Id.* at 6). Plaintiffs did not include medical records in their response to Defendants' Request for Production, but they did provide Authorizations for Release

of Personal Health Information and Records "for all medical and/or treatment provides identified in the above interrogatories." (*Id.* at 12).

Although Defendants point to Mr. Crabbs's deposition testimony as providing that his neck was injured before the incident, Plaintiffs have indicated that they do in fact allege neck injuries. Thus, Dr. Schnackel's testimony regarding neck injuries is relevant and was disclosed to Defendants.

Plaintiffs were less than clear as to whether Dr. Schnackel was being offered as an expert witness. Although they listed him as an expert witness in their Supplemental Disclosures, their initial disclosure indicated they did not have any expert witness reports. (ECF No. 116-2 at 11). It is unclear if this was because they had not yet decided that Dr. Schnackel would be an expert witness or because they never intended to offer him as an expert. This is immaterial, however, since Plaintiffs have responded that they will not be offering Dr. Schnackel as an expert.

Defendant's Motion is hereby **DENIED**. Dr. Schnackel will be permitted to testify to the injuries for which he treated Mr. Crabbs.

*6. Plaintiffs' Demonstrative Videos (ECF No. 122)*

Defendants move to exclude Plaintiffs' demonstrative videos because they "materially differ from the actual circumstances and environment at the Crabbs' residence on September 30, 2014[,] . . . are irrelevant and duplicative," and "would confuse and mislead the jury." (ECF No. 122 at 1). Plaintiffs filed a response. (ECF No. 138). For the following reasons, this Court **WITHOLDS RULING** on Defendants' Motion.

Defendants argue that Plaintiffs' videos should be excluded because of significant discrepancies between the videos and the testimony about the conditions on the night in question. Specifically, Defendants take issue with where Anne Crabbs is standing in the videos (in the

hallway rather than the dining room as the testimony establishes), the depiction of James Crabbs who was not present that evening, the absence of Mr. Crabbs's grandmother when she was close by that night, and the absence of any deputies. (ECF No. 122 at 4–5).

Plaintiffs respond that the videos are meant to "assist Anne Crabbs in describing the events of that night" rather than recreating the scene. (ECF No. 138 at 3). Plaintiffs suggest that Ms. Crabbs's testimony or this Court's instruction can limit jury confusion and that Plaintiffs can remove Mr. Crabbs's father from the video.

Experimental evidence, including demonstrative videos, must be "identical with or similar to the conditions of the transaction in litigation." *United States v. Baldwin*, 418 F.3d 575, 579–80) (6th Cir. 2005). Once the depictions are "substantially similar" to the actual events, "dissimilarities [ordinarily] affect the weight of the evidence, not its admissibility." *Persian Galleries v. Transcontinental Ins. Co.*, 38 F.3d 253, 258 (6th Cir. 1994) (quoting *Champeau v. Fruehauf Corp.*, 814 F.2d 1271 (8th Cir. 1987)). "[P]erfect identity between actual and experimental conditions" is not required." *Persian Galleries*, 38 F.3d at 258.

The substantiality of these differences depends on what the Plaintiffs are attempting to show with the videos. As such, this Court will defer a ruling on this Motion until more context for the videos can be developed at trial.

## IV. CONCLUSION

For these reasons, the Court **GRANTS** Plaintiffs' Motion to exclude the Response to Resistance Board's investigation and findings, Defendants' Motion to Exclude Evidence Regarding Dismissed Claims and Parties, Defendants' Motion to Exclude Evidence of Defendants' Prior Use of Taser Against a Subject, and Defendants' Motion to Exclude Plaintiffs' Undisclosed Evidence of Keith Crabbs' Alleged Mental Health Injuries. The Court **GRANTS IN**

**PART** Defendants' Motion to Exclude Evidence of Defendants' Prior Discipline, Plaintiffs' Motion to Exclude Post-Arrest Hearsay and Conduct, Plaintiffs' Motion to Exclude Evidence Proffered by Steve Ijames, and Plaintiffs' Motion to Exclude Evidence of Defendants' Awards and Commendations. The Court **DENIES** Defendants' Motion to Exclude Testimony from William Schnackel, M.D. and Plaintiffs' Motion to Limit Testimony of Dora D'Amato and Roland D'Amato, and **WITHOLDS RULING** on all or part of Defendants' Motion to Exclude All or Any Portion of Plaintiffs' Demonstrative Videos and Plaintiff's Motion to Exclude Post-Arrest Hearsay and Conduct. The Court **DENIES** Plaintiffs' Motion to Alter or Amend this Court's Summary Judgment Order.

      **IT IS SO ORDERED.**


                                       **s/Algenon L. Marbley**
                                     **ALGENON L. MARBLEY**
**DATED:  October 23, 2018**              **United States District Judge**