IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ANNE CRABBS, et al., | : |
| | : |
| | : Case No. 2:16-cv-387 |
| Plaintiffs, | : |
| | : CHIEF JUDGE ALGENON L. MARBLEY |
| v. | : |
| | : Magistrate Judge Jolson |
| RASHAD PITTS, et al., | : |
| | : |
| Defendants. | : |

## ORDER

This matter is before the court on Plaintiff Anne Crabbs' Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(b) and Motion for a New Trial pursuant to Fed. R. Civ. P. 59(a) (ECF Nos. 180, 181). For the reasons stated below, Plaintiffs' Motion for Judgment as a Matter of Law and Motion for a New Trial are **DENIED**.

### I. FACTUAL AND PROCEDURAL HISTORY

This Court has set out the the facts of this case on numerous occasions, most thoroughly in its order on Motions for Summary Judgment. (ECF No. 100). Only the following factual summary is necessary at this time.

On September 30, 2014 the Delaware County Sheriff's Office ("DCSO") dispatch received a 911 call from Dora and Ronald D'Amato notifying the police that their neighbor, Keith Crabbs, had threatened Mrs. D'Amato's life while she was walking her dog in the neighborhood. (ECF No. 58-3). DCSO Deputies responded to the call and after interviewing the D'Amatos and reviewing a video-recording of the incident determined there was probable cause to charge Keith Crabbs with the misdemeanor of Aggravated Menacing. (ECF No. 57-10 at 19;

ECF No. 57-7 at 89); O.R.C. 2903.21.  The Deputies proceeded to the Crabbs' residence. When Deputies arrived, Keith Crabbs was not at the residence (ECF No. 57-2 at 22). Deputies left the property, but waited in the neighborhood for Mr. Crabbs' return (ECF No. 57-10 at 18). Upon Mr. Crabbs' entrance into the neighborhood, DCSO Deputies positively identified Plaintiffs' vehicle and followed him to the residence (ECF No. 57-10 at 28). There, DCSO Deputies allege that they immediately told Mr. Crabbs to stop, but Mr. Crabbs attempted to enter the home anyway.  (ECF No. 57-9 at 53; ECF No. 58-8).  Officer Pitts followed Mr. Crabbs into the home.  A struggle ensued that culminated in Mr. Crabbs being tased, arrested, and taken into custody. (ECF No. 57-9 at 53; ECF No. 57-7 at 106-07).

Anne Crabbs, Keith Crabbs, and James Crabbs initiated suit against Deputies Pitts, Wilson, Lee, Keller, Andrews, and Mox, and Sheriff Martin on various constitutional and civil grounds.  (ECF No. 1).  On June 13, 2017, this Court granted an order substituting "Ms. Crabbs, personal representative of Keith Crabbs, deceased," as a plaintiff in this action, after Mr. Crabbs passed away. (ECF No. 49).  After motions for summary judgment from both parties, the case proceeded to trial, after which the jury rendered judgment for the Defense. (ECF No. 100 at 30-31; ECF No. 172).  Following the verdict, the Plaintiffs filed the present Motion for Judgment as a Matter of Law and Motion for a New Trial.  These motions have been fully briefed and are ripe for review.

## II. STANDARD OF REVIEW

A Motion for Judgment as a Matter of Law "may be granted only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Radvansky v. City of Olmstead Falls*, 496 F.3d 609, 614 (6th Cir. 2007) (citing

*Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 598 (6th Cir. 2001)). In making this determination, this court "may not weigh the evidence, pass on the credibility of witnesses, or substitute [its] judgment for that of the jury." *New Breed Logistics*, 783 F.3d 1057, 1065 (6th Cir. 2015) (citing *Spengler v. Worthington Cylinders*, 615 F.3d 481, 489 (6th Cir. 2010)); *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150 (2000). To succeed on a Motion for Judgment as a Matter of Law, Plaintiffs must "overcome the substantial deference owed a jury verdict." *Radvansky v. City of Olmstead Falls*, 496 F.3d 609, 614 (6th Cir. 2007). Plaintiffs must demonstrate that "there was no legally sufficient evidentiary basis for a reasonable jury to find for [the prevailing] party." *White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789, 794 (6th Cir. 2004), *aff'd sub nom. Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (internal quotation marks omitted).

Rule 59 allows parties to move for a court to alter or amend a previously issued judgment. *See* Fed. R. Civ. P. 59(a). Courts are permitted to grant a new trial if a previous judgment "is against the weight of the evidence, if the damages award is excessive, or if the trial was influenced by prejudice or bias, or [was] otherwise unfair to the moving party." *Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 637 (6th Cir. 2000). Determining whether a new trial is appropriate is "within the discretion of the trial court." *Kramer Consulting, Inc. v. McCarthy*, 2006 WL581244 (S.D. Ohio 2006). When a party argues that the jury's verdict is against the weight of the evidence, the verdict will be upheld "if it was one which the jury reasonably could have reached." *Innovation Ventures, LLC v. N2G Distributing, Inc.*, 763 F.3d 524, 534 (6th Cir. 2014). Motions on those grounds are rarely granted. *Id.*

### III. LAW AND ANALYSIS

#### A. Motion for Judgment as a Matter of Law

Plaintiffs have moved for judgment as a matter of law against Officer Pitts on the issue of unconstitutional entry. (ECF No. 180). Plaintiffs argue that Pitts's entry into the home was unconstitutional if Pitts made the entry, even in part, to arrest Keith Crabbs. Plaintiffs argue in the alternative that Pitts loses on the affirmative defense of exigent circumstances and that this Court need not even address the affirmative defense of exigent circumstances. (ECF No. 180 at 10).

There was never any doubt, in this case, that Officer Pitts entered the Crabbs' home without a warrant. It is a "'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 477–78 (1971)). Plaintiffs rely on *Payton v. New York* for the proposition that if Officer Pitts entered the home with the intention of arresting Keith Crabbs, then the entry was unlawful. But Plaintiffs overlook the key reasoning in *Payton*. *Payton* struck down "New York statutes that authorize[d] police officers to enter a private residence without a warrant and with force, if necessary, to make a routine arrest." *Payton*, 445 U.S. at 574. *Payton* was not a case about officer *intent*, *per se*, but about *warrantless* entry. Thus, to say that under *Payton*, it is unlawful for an officer to enter a suspect's home without a warrant for the purpose of making an arrest is to misplace the emphasis on what part of the New York statute the Supreme Court found objectionable under the Fourth Amendment—*Payton* was about the importance of a warrant. Most importantly, *Payton v. New York* left intact the standard exceptions to the warrant requirement, including exigent circumstances. As the Supreme Court noted, the state judge did not examine whether the exigent

circumstances exception "would have justified the failure to obtain a warrant, because he concluded that the warrantless entry was adequately supported by the statute without regard to the circumstances." *Payton*, 445 U.S. at 578.

Because it is "presumptively unreasonable" for an officer to enter a home without a warrant, and Officer Pitts entered the Crabbs' home without a warrant, the question becomes whether exigent circumstances justified doing so. That was the basis of this Court's ruling on summary judgment, and it remains a correct interpretation of the law.

As this Court noted at summary judgment, exigent circumstances that justify warrantless entry are "situations where real immediate and serious consequences will certainly occur if a police officer postpones action to obtain a warrant." *Thorne v. Steubenville Police Officer*, 463 F. Supp. 2d 760, 771 (S.D. Ohio 2006) (Marbley, J.), *aff'd in part, rev'd in part on other grounds and remanded sub nom. Thorne v. Lelles*, 243 F. App'x 157 (6th Cir. 2007). (ECF No. 100 at 15). This Court allowed the Defendants' claim of exigent circumstances based on "risk of danger to the police or others," *United States v. Johnson*, 22 F.3d 674, 679 (6th Cir. 1994), to survive summary judgment.

Plaintiffs argue that, under *Payton*, the risk of danger exception cannot apply "if the officer's intent in entering is in any way motivated by the intent to arrest or to search for criminal evidence." (ECF No. 180 at 13). But, as noted, *Payton* did not look to the intent of the arresting officers. As even Plaintiffs have acknowledged, the test for whether exigent circumstances exist is objective—"the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." *Mincey v. Arizona*, 437 U.S. 385, 392 (1978). As the Supreme Court has recently reiterated, "it does not matter here . . . whether [officers] entered the [home] to arrest respondents

and gather evidence or to assist the injured and prevent further violence." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 398 (2006). In *Brigham*, the Supreme Court expressly rejected the argument that the officers' actions were unreasonable because they "were more interested in making arrests than in quelling violence," emphasizing instead, that "[t]he officer's subjective motivation is irrelevant." *Id.* at 404.

Plaintiffs rely on *United States v. Williams* for the proposition that the risk of danger exception only applies when officers are acting in their "community care-taking function" and thus when the police actions "are totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *United States v. Williams*, 354 F.3d 497, 508 (6th Cir. 2003). Plaintiff confuses the issue. In *Williams*, the Sixth Circuit analyzed the "risk of danger" and "community caretaking" exceptions as entirely separate exigencies. *Id.* at 506 (noting "the *Rohrig* Court admittedly fashioned a new exigency that justifies warrantless entry") (internal quotation marks omitted). Although Williams stated that the "risk of danger" exception "most frequently justifies 'warrantless entries in cases where the Government is acting in something other than a traditional law enforcement capacity,'" *Williams*, 354 F.3d at 503, Williams did not suggest that acting outside the traditional law enforcement capacity, i.e., a community-caretaking function, was the only way to come under the protection of the risk of danger exception. Thus, the risk of danger exception can apply in situations where law enforcement is faced with a risk of danger to police or others that is not completely divorced from their typical law enforcement duties.

Further, the jury's finding that the officer's conduct was justified by an exigency is reasonable. *See Ryburn v. Huff*, 565 U.S. 469 (2012). In *Ryburn*, the Supreme Court reversed denial of qualified immunity, finding that a reasonable officer could have believed "that entry

was necessary to avoid injury to themselves or others." *Ryburn*, 565 U.S. at 477. The facts of *Ryburn* were as follows:

> [T]he officers testified that a number of factors led them to be concerned for their own safety and for the safety of other persons in the residence: the unusual behavior of the parents in not answering the door or the telephone; the fact that Mrs. Huff did not inquire about the reason for their visit or express concern that they were investigating her son; the fact that she hung up the telephone on the officer; the fact that she refused to tell them whether there were guns in the house; and finally, the fact that she ran back into the house while being questioned. That behavior, combined with the information obtained at the school—that Vincent was a student who was a victim of bullying, who had been absent from school for two days, and who had threatened to 'shoot up' the school—led the officers to believe that there could be weapons inside the house, and that family members or the officers themselves were in danger. App. to Pet. for Cert. 6.

*Ryburn*, 565 U.S. at 474–75.

The facts of *Ryburn* resemble the facts as presented at trial. The Officers responded to a call from a neighbor, reporting that Keith Crabbs had threatened her. The Officers listened to an audio recording in which they believed they heard Keith Crabbs threaten the neighbor and determined probable cause existed to charge Mr. Crabbs with misdemeanor Aggravated Menacing. (ECF No. 57-10 at 19; ECF No. 57-7 at 89); O.R.C. 2903.21. Upon arriving at the Crabbs' residence, the Officers learned that Mr. Crabbs had a Concealed Carry Weapon (CCW) permit, and dispatch told the Officers there was an in-house caution for Mr. Crabbs that stated "threats to law enforcement in the past." (ECF Nos. 57-10 at 12; 57-9 at 35; ECF No. 61-9). Due to Mr. Crabbs' highly agitated appearance on the cell phone recording, the Officers called for backup (ECF No. 57-10 at 8); (ECF No. 57-7 at 83; ECF No. 57-4 at 54). Mr. Crabbs drove through the neighborhood shortly after and officers followed him back to his house. As he made his way to the porch, Mr. Crabbs ignored Officer Pitts' commands to "stop," and retreated into his home, at which time Officer Pitts followed Mr. Crabbs into the home. (Plaintiffs Ex. 47). Granting Plaintiffs' motion would require this Court to make credibility determinations and

weigh conflicting evidence—actions prohibited when ruling on a Rule 50 motion for judgment as a matter of law. Here, Officer Pitts testified that he was concerned for the safety of those inside the Crabbs' residence and his fellow officers. On cross-examination, Pitts did respond to at least one question that he went into the house after Keith Crabbs to arrest him, but as this Court has already found, the officer's intent is irrelevant.

Plaintiffs also argue that Deputy Pitts' dash cam video and inconsistencies in Pitts' testimony require this court to find that Pitts entered the Crabbs' home to effect an arrest. (ECF No. 180 at 6–9). As indicated above, subjective intent is irrelevant. Furthermore, the dash cam video is inconclusive on this matter because the portion of the frame in which Deputy Pitts stated Ms. Crabbs is standing is not visible on the dash cam video. (Plaintiffs Ex. 47.) Deputy Pitts testified that Ms. Crabbs "was by the glass looking through the glass. That's when I told her I'll get with her in a minute. She was by the glass slightly out of the screen and that's when she opened the door." (ECF No. 176 at 3803–04.) In addition to the fact that Pitts' testimony references a part of the house that is not visible in the video frame, Mr. Crabbs' body is blocking the view of the doorknob making the events surrounding the opening of the door and Mrs. Crabbs' involvement in the situation inconclusive. (Plaintiffs Ex. 47). Additionally, the remainder of Deputy Pitts' testimony is largely undisputed by the dash cam video. (ECF No. 176; Plaintiffs Ex. 47).[1] For these reasons, this Court cannot discredit Deputy Pitts' testimony as contradicted by the dash cam video. *See Scott v. Harris*, 550 U.S. 372, 378-79 (2007); *Williams*,

---

[1] The facts of consequence in Deputy Pitts' testimony corroborated by the dash cam video include Mr. Crabbs exiting his vehicle and tapping his side in the manner described by Deputy Pitts as "blading," Mr. Crabbs quickly walking towards the front door, Deputy Pitts yelling "stop" several times at Mr. Crabbs, Deputy Pitts grabbing for Mr. Crabb while he is in the door frame, Mr. Crabb freeing himself from Deputy Pitts grasp, Deputy Pitts entering the home in pursuit of Mr. Crabb, and Deputy Wilson quickly following and entering the home. (ECF No. 176; Plaintiffs Ex. 47).

8

132 F.3d at 1131 (The evidence should not be weighed, and the credibility of the witnesses should not be questioned. The judgment of this court should not be substituted for that of the jury . . . .").

Plaintiffs further argue that no exigent circumstances existed because Defendants controlled the timing of the encounter. (ECF No. 180 at 14). Plaintiffs rely on *United States v. Morgan,* 743 F.2d 1158 (6th Cir. 1984) to assert that the police cannot claim that there was insufficient time to seek a warrant if the police control the timing of the encounter giving rise to the search. In *Morgan*, after receiving a radio alert regarding suspicious activity outside the Morgan home, police officers met at a local coffee shop and strategized the logistics of approaching the home, including assigning each of the officers roles for the confrontation. *Id.* at 1163. The house was peaceful upon arrival of law enforcement and all of Morgan's previous interactions with police had been positive, although one of the officers had heard a rumor that Morgan was dangerous and willing to shoot law enforcement. *Id.* The court specifically noted that "[a]ll the proven evidence indicates Morgan and his friends posed no risk to anyone until the police officers surrounded the Morgan home and flooded it with high-powered spotlights." *Id.* When asked at the suppression hearing as to why they did not obtain a warrant, the police officers stated that "the judges are hard to reach on the weekend." *Id. at 1161.* The appeals court determined that Morgan was arrested illegally when the police officers "utilized coercive tactics and physical restraints which induced his presence at the door." *Id.* at 1168.

*Morgan* is distinguishable from the facts at hand because here, the officers did not control the timing of the encounter with Mr. Crabbs. The officers arrived at Mr. Crabbs' residence after hearing a recording of Mr. Crabbs making a death threat against known persons— Mr. Crabbs' neighbors, the D'Amatos. (ECF No. 57-10 at 19; ECF No. 57-7 at 89). The Officers knew that

Mr. Crabbs had a CCW permit, was highly agitated at the time of the incident, and had made previous threats to police. (ECF Nos. 57-4 at 54; 57-7 at 83; 57-10 at 8–12; 57-9 at 35; 61-9). The confrontation with Mr. Crabbs occurred in the driveway and stoop by the front door. Police did not use their firearms or floodlights to coerce Mr. Crabbs out of his home in a controlling manner. (ECF No. 176; Plaintiffs Ex. 47). Furthermore, Plaintiffs themselves indicate that the officers were in the process of obtaining a warrant (ECF No. 180 at 14) and were not trying to induce Crabbs out of his home with coercive tactics specifically to avoid obtaining a warrant.

There is a "legally sufficient evidentiary basis for a reasonable jury to find," as it did, in rendering a judgment for the Defense. *White v. Burlington & Santa Fe Ry.*, 364 F.3d at 794. Because the record provided ample evidence from which the jury could form an opinion, this Court declines to set aside the jury's verdict and **DENIES** Plaintiffs' Rule 50(a)(1) motion.

### B. Motion for a New Trial

Plaintiffs have moved for a new trial under Rule 59(a) based on an erroneous jury instruction and because the verdict was against the manifest weight of the evidence. (ECF No. 181 at 1).

First, Plaintiffs argue that this Court erroneously instructed the jury by denying Plaintiffs' requested instruction that Officer Pitts's entry could only be reasonable under an exception to the warrant requirement if his "entry was completely divorced from any intent to make an arrest of Keith Crabbs." (ECF No. 181 at 3). This argument is premised on an untenable reading of Supreme Court and Sixth Circuit precedent that this Court rejected above in ruling on Plaintiffs' Motion for Judgment as a Matter of Law. Moreover, "mere error in the jury instructions does not itself require a new trial if the error is harmless," and Plaintiffs have failed to demonstrate how the exclusion of this instruction constitutes substantial error. *Troyer v. T.John.E. Prods.*,

*Inc.*, 526 Fed.Appx. 522, 525 (6th Cir.2013) (citing *Barnes v. Owens–Corning Fiberglas Corp.*, 201 F.3d 815, 822 (6th Cir.2000)). Thus, Plaintiffs' Motion for a New Trial cannot succeed based on their argument that the Court erred in the instruction given to the jury.

As to Plaintiffs' argument relating to the sufficiency of the evidence, Defendants counter that Plaintiffs have waived their claims because they did not move for judgment as a matter of law on those claims. (ECF No. 192 at 14, 18). While it is true that that the Sixth Circuit has opined that "motions for a new trial should not be used as a loophole for presenting sufficiency arguments that were not properly preserved by a pre-verdict motion for JMOL," a trial court is still entitled to order a new trial if "the evidence was insufficient as a matter of law." *Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 509 (6th Cir. 2016) (*quoting Portage II v. Bryant Petroleum Corp.*, 899 F.2d 1514, 1523 (6th Cir.1990)). Just as the Sixth Circuit and District Court did in *Braun*, this Court declines to address whether Plaintiff waived those arguments because this Court finds that Plaintiff's sufficiency arguments fail on the merits. *Id.* at 509.

### 1. *Unlawful Entry*

Plaintiffs also argue that the unlawful entry verdict was against the weight of the evidence. As discussed above in the section addressing Plaintiffs motion for judgement as a matter of law,[2] there is no basis for determining that the jury's verdict was against the weight of the evidence. For the reasons articulated above, this Court finds that there was sufficient evidence for the jury to reasonably find in favor of the defendants on the unlawful entry claim and declines to grant a new trial on this basis.

---

[2] *See* Section III.A. Motion for Judgment as a Matter of Law

## 2. *Excessive Force and Fabrication of Evidence*

Plaintiffs urge this court to grant a new trial arguing that the jury's verdict was against the weight of the evidence on the excessive force and fabrication of evidence claims. Plaintiffs argue that Anne Crabb's testimony, a jail photo taken of Keith Crabbs' back, Pitts' dash cam footage, and Pitts' conflicting testimony necessitate a finding that Crabbs was tased twice and subjected to excessive force. (ECF No. 181 at 4–10). Plaintiffs specifically suggest that this Court should grant a new trial because in weighing the evidence it will find that Officer Pitts' story "changed, morphed, with every telling." *Id.* at 12. The Sixth Circuit has held that "witness credibility is solely within the jury's province, and this court may not remake credibility determinations." *McDonald v. Petree*, 409 F.3d 724, 731 (6th Cir. 2005). A court is not entitled to reconsider the credibility of witnesses "merely because other inferences or conclusions could have been drawn or because other results are more reasonable" *Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 448 (6th Cir. 2011) (internal citations omitted) (affirming district court's denial of plaintiff's motion for a new trial noting that district court did not err by refusing to make credibility determinations regarding testimony of various witnesses).

A review of the record and evidence in this case demonstrates Plaintiffs' inability to "overcome the substantial deference owed to a jury verdict." *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir. 2007). Plaintiffs argue the evidence they presented as to excessive force is conclusive, but defendants counter with equally compelling evidence. Defendants point to testimonial evidence of Deputies Pitts, Lee, and Wilson that only Pitts' taser was used on the night of Crabbs' arrest. At trial, Defendants also adduced the testimony of Deputy Matt Graham who verified that each deputy is assigned only one taser and that Pitts' taser was not fired on September 30, 2014 by pointing to a firing log downloaded from Deputy

Lee's taser. (ECF No 192 at 16). In addition, Defendants note that Crabbs identified Pitts as the one who tased moments after he was tased. *Id.* As the Sixth Circuit indicated in *Lee*, where there is "probative evidence presented to the jury that supports the jury's ultimate verdict, it is not within the province of the court to overturn the jury's decision to accept [plaintiff's] evidence." *Lee*, 432 F. App'x at 448.

As to the fabrication of evidence claims, Plaintiff has linked the fabrication of evidence claim to the excessive force claim, arguing that if the verdict on its claim for excessive force cannot stand, then neither can the verdict on its fabrication of evidence claim. (ECF No. 194 at 8). Because Plaintiff has not made any separate arguments relating to this claim, this Court finds that the jury's verdict on Plaintiff's fabrication of evidence claim was supported by the weight of the evidence.

This court finds that there was sufficient evidence in the record for the jury to reasonably find for Defendants on the excessive force and fabrication of evidence claims. Accordingly, this Court **DENIES** Plaintiff's Motion for a New Trial.

### IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(b) and Plaintiffs' Motion for a New Trial pursuant to Fed. R. Civ. P. 59(a) are **DENIED.**

**IT IS SO ORDERED.**

     s/ Algenon L. Marbley
ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE

**DATED:  September 27, 2019**